This is a unique and remarkable court, in my opinion, from that perspective. The two brief observations before we get started with the first case, which is the United States v. Guy Smith. For those of you who are unfamiliar with our lighting system and our timing system, you'll notice that we have a timer and a clock, and we've got green light means, of course, that you can proceed. And amber is a two-minute warning, and red means that your time is up. And when that light goes on, we'd be much appreciative if you could bring your remarks to a conclusion. It doesn't mean you have to stop dead in the middle of a sentence, but we'd be much appreciative if you'd bring them to a conclusion as we proceed. Second observation, as you proceed with your arguments, you may safely assume that we've had a chance to review the briefs, the record excerpts, and in some instances, we've had a chance to read the transcript, the record itself. So feel free, really, to go to the heart of your argument. With that, we'll begin with the first case, United States v. Guy Smith. May it please the court. Good morning. My name is Ali Kamalzada. I work for the Federal Defender's Office, and I represent the appellant, Diana Smith. The issue before this court is whether Mr. Smith suffers a present harm from his unconstitutional 704 conviction vacated or removed from his criminal history. Here, the district court erred in concluding that the vacatur of Mr. Smith's 704 conviction is not more than a present incidental harm in two separate but interrelated ways. The first is the current conviction serves as an impediment to getting an earlier hearing triggering a full review by the parole commission, and where the commission has the discretion and authority to grant him immediate release. May I ask a question about the FDLE letter in 2013, which apparently represented that there they believed there was two stolen valor convictions, August 26th and November 20th. I believe that's incorrect, but in any event, I think that letter represented that those were removed from his record. Is that right or wrong? It is correct, Your Honor. So if the stolen valor convictions have now been removed, is this case moot? I would make a slight correction there. One of the two were removed. One was a duplicate. It was a state offense raising the same. So the commission is still relying on the federal conviction under 704. So all that was removed was he had a state and a federal conviction on the stolen valor, so all they removed was the state conviction. Along with some other state convictions, yes, Your Honor. Okay. What still remains, just help me understand factually, as I understood it from the testimony of Ms. Tully, and tell me where maybe I misapprehend this. When they had four qualifying prior convictions which yielded for the parole commission a score of two with a base of 240 months, there was one, an October 10th, 68 conviction for misdemeanor traffic offense. Two, there was a June 21st, 1970 concealed carry conviction. Three, there was a firearm possession conviction, June 18, 72. And four, there was a reckless driving misdemeanor charge in 75, October of 75, which was apparently converted into an obstruction of justice for which adjudication was withheld and for which the court costs were assessed against him. As I understand it, you don't challenge two and three, the firearms possession and the reckless driving, right? That's correct, Your Honor. Okay. So the question then turns on one and four? Yes, Your Honor. Okay. And can I ask you one sort of preliminary question? Is the district court's determination that there is no present effect, is that a finding of fact or a mixed question of fact and law? It certainly sounds like from our remand, like we envision this to be a factual finding. There's been no finding of fact. You should conduct an evidentiary hearing. You guys go back, put on documentary evidence and testimonial evidence. The district court makes what it calls findings. I think in your briefing, you even refer to it as a factual matter. It may affect our standard of review. So is the district court's determination here that there is no present effect from the 704A a factual finding? It's both, Your Honor, factual and in law. With regard to the factor, in our argument, and we would submit that the district court applied the wrong standard here, and that's where they erred. The district court looked at these factors with regard to the salient factor score and said it does not change the salient factor score in its calculation. Therefore, he's not entitled to an earlier hearing. But the entitlement is a higher burden than this court or man in its order. In its order, it cited to Sloan, and Sloan stated that you have to show a present harm that is more than incidental. And so where the court erred is it's focused on its analysis on just the salient factor score. But we would submit that Mr. Smith succeeds on the fact that he can show to the commission under the administrative rules 23-21.012, subsection 1E, that if he can provide the commission with a situation like he has here, an order vacating a conviction that they've relied on previously, then he can actually have the parole commission conduct an entire review of his record. In that case, the commission would then review and weigh his criminal history score, his offense conduct and the incident state offense, as well as any other conduct while he's been incarcerated. And that in itself is our position that that's the incidental, more than incidental harm that he's shown. So is that not what Tully did? I mean didn't Tully sort of re-crunch the numbers, re-crunch the analysis and say, forget about 704A, these other two that Judge Marcus mentioned, they're sufficient to sort of fill the gap and now the salient factor score is still the same and the aggravators are still bad and so it just wouldn't have mattered, sort of harmless error. If that's a factual finding, it seems awfully difficult to upset on the appellate report. There's two parts of that. First, Ms. Tully was relying on a new criminal history report that she printed the Friday before the Monday hearing. And two... But do you disagree with that report, factually? Well, it was a report that the commission itself never relied upon. Well, my question was do you agree with that report factually? Yes, I mean... Right, okay. Yes, yes, Your Honor. So with regard to the commission historically on the record, what we had from the commission, which provided us over 400 pages of Mr. Smith's parole hearing records, was that they consistently in 2002 and 2012 relied on three prior convictions. Now, Ms. Tully came into the hearing and said that based on her review, she would count more. But there was nothing in the record, the historical record in this case, that the commission utilized those other two convictions in their calculation. However, regardless if they had, the point here is Mr. Smith can approach the commission with a vacatur of this conviction and go, I would like, based on the ministry rules, I have the opportunity to present new information. And citing to document 28-9, the district court relied on this in its finding, but the district court stopped short with regard to what it was quoting and the commission's findings of why Mr. Smith was not eligible in 2012-2013 hearing. It's halfway down, and I understand that some of these exhibits were not very legible. But the commission stated that it has no information or has not received any information that has been gathered or presented that would warrant an adjustment. Meaning at the time that Mr. Smith had his 2013 hearing, he had nothing to show under the administrative rules to allow the commission to conduct essentially a de novo review of his entire parole file. Previously, the commission, what it does is it sends out an interview or an examiner, and that examiner conducts an interview with the parolee. And if there's nothing the parolee can provide to them— But I'd like to drill down again on this basic question. The ultimate conclusion that the district court reaches is plainly a legal determination or a mixed question of law and fact that we would review de novo. But he says, and I want to quote what the district court says, he says, even if granting the requested relief did change the score, Smith had failed to demonstrate that this amendment would amount to a substantial change in the score, nor would otherwise entitle him to an earlier parole hearing. Isn't that fact-finding? Well, Your Honor— Even if the conclusion that he drew from that was a legal determination or at least a mixed question of law and fact? That's where the district court erred. It conflated the standards. It took the Florida Paroles Commission's substantial change standard and conflated it with the federal standard, which is more than incidental. Effectively, and again, it's a six-page order with the district court's findings, and the first five pages are really running through the procedural. Well, what do you think he made? What kind of finding of fact do you think he made if this, what I just read to you, did not include an irreducible finding of fact? If that wasn't a finding, what findings did he make in your view that were entitled to deference and only clear error review? Well, Your Honor, if we go to the last paragraph of the district court's order, his sentences conflict with one another. So you mean he made no findings? Well— Did he make any findings of fact in your judgment? And if the answer is yes, what findings of fact did the district court make here? If I may, Your Honor, when he states, even if granting the request of relief did change the score, it says the defendant has failed to demonstrate that this amendment would amount to a substantial change in the score, nor otherwise entitle him to an early parole hearing, this is an incorrect finding by the court. I guess I'm not making myself clear. You may come back and say that finding of fact was clearly erroneous because, and you might be right, but I'm asking a different question. I'm simply asking whether or not it is a finding of fact to begin with, to say that the amendment would not likely show a substantial change in the score. Maybe he's got it right. Maybe he's got it wrong. But is that a finding of fact is all I'm asking you. Yes, it is a finding of fact. Okay, let me ask just one other question. If we review that finding for clear error, there's a colloquy, a very interesting colloquy between the district judge and Tully when Tully testifies before the court at this hearing. And the judge basically says to Tully, what would happen if, in essence, I were to agree that that conviction was unconstitutional and had to be set aside? Would that be enough to get him a new hearing? Tully says, and they spar for four or five questions, Tully says, not necessarily. Then the court says, or a new date. And Tully says, in this case, if we were presented with the information with one conviction gone, it would not impact his salient fact to score. The court, but could they consider it and give him an early hearing? Tully, I suppose they could. It's not probable. The court, you mean you don't think they would do it, but they could? Tully, really, I mean, this is a minor conviction we're talking about, and it doesn't change the salient fact to score. So we would not, in other cases, we had convictions overturned or new information, you know, we had to put them back on because, you know, the salient fact to score, the court. So if it doesn't affect the salient score, then the likelihood, and I'm speaking of probabilities, is that the commission will not. It would not affect anything. It's reported as a statement, but it's really a question. Tully, that's correct. And then I would say, based on the last interview they had with him and the reasons stated for his extended interview, they wouldn't consider anything earlier. The district judge obviously relied on that and reached his own finding as to salient factors. Why isn't that entitled to clear error review and not clearly erroneous based on what Tully said? Far down the record on page 56, Your Honor, on cross-examination, the same question was asked. If Mr. Smith's federal conviction were vacated, if it were to be removed, you can't say for certain. The commission would not consider it removed as something being substantial, but then they consider rehearing a review, and her response was not for certain. So you have this testimony from Ms. Tully that is conflicting throughout the hearing, the evidentiary hearing. Is it really conflicting or is it just that she's saying it's not for certain, but here's what I think would happen, and the district court judge takes all of that evidence, combining it with the documentary evidence introduced, and says this is my determination, my factual determination as to the likelihood, the probability of what would happen. It sounds inherently factual. Actually, in doing so, the district court applied the wrong standard with regard to his analysis and his conclusions. It's one thing if Ms. Tully sat there and said removing the conviction would do absolutely nothing. It would trigger no event, and essentially the remedy is infirm, but that's not the case here. The administrative code and the testimony in the historical record reflects that if the conviction's removed, it triggers an event to present itself before the commission and have a complete review, which in effect, the commission can- It doesn't trigger a complete review. It's still up to the discretion of the board, and in fact, the board with that information, at least of this challenge and of the change in the Supreme Court cases, didn't the board conclude that nothing there warranted any new review? No, Your Honor. In that, what you're citing to is the email from the commissioner to Mr. Smith's sister where she says that based on the information you've presented us, there is nothing that would change. Yes, yes. Your only avenue is go to court. Yes. Because his sister at the time had only presented the FDLA report and only a statement regarding the federal conviction, that it was now invalid based on a Supreme Court decision, but the Florida administrative rules are very clear. It says that you must come before the commission with a court record. That's the 23-21.012, subsection 1E. That says that you cannot have the commission review a document without it being an official record here if his sister had- That wasn't what the commission relied on in saying there's no warrant of a new review. Was it the form of the papers brought before them that they said made it inadequate? They just simply said we don't see anything here that warrants a review. The commission can only consider what documentation they have before them, actual records. And his sister provided the FDLA report, which had no impact on the 704 conviction. She only stated in the email that the conviction was invalid now, but it was still valid and it still appeared on his NCIC report. It's only when Mr. Smith approaches the commission with a vacated conviction, court order in this case, along with the other documentation, that the commission can then trigger the entire review. That's what the administrative codes provide for. That's the impediment. This is Mr. Smith's golden ticket, essentially. Without any other opportunity, Mr. Smith can't come before the commission and ask them to conduct a complete review. It'll always be an interview that relies on the same information. I think the time clock's got you. We'll give you the full five minutes. Thank you. May it please the court. Karen Hotman for the United States. Your Honors, I'd like to address three main points that were just brought up during argument. The first was focusing on the fact that this is a factual finding and the correct standard of review for addressing it. The second is the fact that defense counsel is now bringing up an additional burden or additional factual finding that he would like this court to address, which I think is outside the scope of this court's mandate, but regardless was already addressed by the district court and resolved. And the third, I'd like to touch on Judge Ebell's question about mootness. I find it very interesting. I have the same question. I do not think we have a mootness problem. I think that this is still under the rubric of continuing consequences, but I'd like to talk about that briefly. To return to the factual finding, this court certainly did view this as a factual matter. That was the entire reason that this court remanded in the first place. At oral argument, the court was very concerned that there had been no evidentiary finding, even though there appeared to be a factual dispute. And so this court sent back in a mandate that was wider than what was addressed a question as to whether, as a matter of fact, the defendant could bear the burden of proving such a continuing consequence, such a heavy burden from his 50-year-old misdemeanor conviction, that the district court should set aside all concerns of finality and address for the very first time his constitutional challenge to the statute underlying that conviction. Was it troublesome that notwithstanding that quite explicit remand that the district court never came back and said, here's what the salient factor is and here's how it's affected and this is my judgment of what it reads? We got some conclusions from the district court. There's no problem, but it was very frustrating with that explicit remand. Tell us about the salient factor. We don't have specific findings. Do you think that that's an adequate response to our prior mandate? I think it is, Your Honor. And I think that the court actually considered and constrained itself at the very beginning of the hearing. The court specifically asked the parties what it was there to find. And after a back and forth between the parties, turned to defense counsel on page 7 and said, so what is he saying the harm is? After another back and forth, the court says, so it is the salient factor score. And counsel says, yes, Your Honor. At that point, I think the district court was quite clearly narrowing its consideration to whether there was an effect on the salient factor score, which was the original factual finding that was brought up, that oral argument that was argued. The additional findings or the additional supposed consequences that are now being brought forth were actually worked in, I suppose, a little bit at the evidentiary hearing and then afterwards, especially this supposed continuing consequence for some sort of procedural right under Florida law for a new hearing. And if I could address that rather briefly, the court's order itself addresses that as well. It says that there's no impact on the salient factor score. And it does, although I agree that there is a bit of a not quite ultimate clarity, but the court says that there is going to be no other effect as well. And this talk of substantial factor is actually under the Florida procedural rules that defense counsel brought up at the evidentiary hearing. The argument became that regardless of whether the salient factor score changes, because it became quite clear that it was not going to, once Ms. Tully took the stand, identified four other convictions, and defense actually did not introduce any other evidence. So didn't even attempt to carry their burden, simply attacked the evidence that the United States was putting in through Ms. Tully. One of those four that Ms. Tully talked about was this traffic offense misdemeanor that was on probation. Are you comfortable, should the court be comfortable that that is counted when it gets downgraded to just a probationary consequence? The court should be comfortable, Your Honor, because a petition from quorum nomis is not the correct arena to be challenging regulatory and procedural matters that the Florida Commission would be addressing. And once we have actual evidence from the trainer for the investigators who works for a commissioner saying, this is what would happen, these would be counted, I think that that fact is sufficient for the court to find that there will be no effect on the salient factor score. When that statement was made, was that statement made in the context and understanding of how that traffic offense was handled? I believe so, because Ms. Tully said that she would be the one who would be analyzing this and had analyzed it for the commissioner and had presented it to Commissioner Coonrad. Do I have this right? Is there a rule, an administrative rule, that says that the purpose of scoring in this category of fire offenses resulting in probation is a duplication of those held at Wilby County? I'm not certain which. Research, so I want to make sure I've got it right. I'll ask your adversary as well. It looks to me like there might be an administrative rule that says that probation is a duplication. There certainly may be, Your Honor. There are three sections of the regulations. I believe two of them were put in evidence. Again, the question of whether we can even get into that or whether the district court was supposed to get into that. But I certainly would not contradict that if that's what Your Honor is reading. In what it's worth, my notes show that it's 23-21.002, parentheses, 37. Thank you, Your Honor. And I'm sorry that I can't address that specifically. No, no, no. It's all good. The second purported consequence that defense counsel is now raising is this consequence of an impediment to an earlier hearing. This is a bit difficult to follow because Mr. Smith already has a hearing scheduled for 2020. The argument seems to be that the possibility of gaining a new hearing at which new evidence will be looked at if there is any evidence is some sort of sufficient significant consequence to attack this conviction. And that's not correct for two reasons. But wouldn't it be a meaningful consequence to have a hearing in 2018 rather than in 2020? It would not, Your Honor. If I could accelerate the date two years for a hearing with this commission, why would that not be a matter of some moment to me? For two reasons, Your Honor. Because we know what will occur at that hearing. Because we know that the salient factor score will not change. So the only consequence from setting aside the conviction if it were to obtain an earlier hearing will have no ultimate consequence on parole possibilities or the sentence. The second is because he is already scheduled for a hearing. Then why on God's green earth would they ever schedule a hearing? Because it's required under statute, Your Honor. And every seven years they must revisit what they did. So it's a fiction. They're just going through the motions. The hearings mean nothing. Well, Your Honor, they certainly mean something. But when you have a defendant who was sentenced originally to death and then was changed to life by the Court of Appeals who has a presumptive parole date of 2042, which was originally calculated in 2002, those hearings do indeed mean very little. What they do is they look at the intervening actions of the defendant while incarcerated. So they'll look at whether he has racked up additional disciplinary infractions for the portion of the presumptive parole date that is dependent on that. Is your answer now to Judge Marcus that all they would be looking at in the 2020 hearing is just his prison performance and they wouldn't go back and recalculate or even allow to recalculate what the scores were? Even if they were, Your Honor, we know that the salient factor score will not change. That's not my question. Are these hearings only to look at prison conduct during that intervening five times? Or is the hearing – does he have the opportunity at this hearing to bring up historical information about what his rating should be? Ms. Tully testified that the only time the salient factor score is actually calculated is at the first hearing in 2002, which, by the way, Mr. Smith did not challenge his conviction between 2002 and 2013. So that would go to another prong of quorum nobis. But she testified that – and I believe this is correct under the Florida rules – that the salient factor score is first calculated in 2002. Now, the commission does have for good cause can look at and can reopen and can even hold another hearing if it would like if it feels that there is some sort of significant change. The argument here was that even though the salient factor score is not affected, somehow the fact that out of the 12 convictions on the NCIC report that remain, not including the misdemeanor conviction, the fact that in the intervening time perhaps a federal conviction was challenged and set aside is going to be somehow meaningful to the commission. I don't think there's anything to support that. But I think the thrust of the question that we're both asking is at a hearing of this kind, whether it occurred in 2020 or in 2018, he would be free to argue and the commission would be free to recalculate the salient factor score if they deemed that appropriate. They could go right back to what they had done in 2002 and redo it based upon an argument he made if they in their discretion thought that was appropriate, right? Correct, Your Honor. They're not limited to simply looking at his behavior during the period of incarceration. I don't believe so, Your Honor. But again, we know as a matter of fact that the salient factor score will not change. We also know because he has a hearing in 2020 that an earlier hearing- Well, all we know is that it probably wouldn't change because that's what Tully said and that's what the district court accepted, right? Correct, Your Honor. We don't know that with any certitude. Correct, Your Honor. But we must have certitude, at least by preponderance of the evidence, for a significant consequence for the misdemeanor conviction. And if the significant consequence we're talking about here is an earlier hearing, that's a consequence of no moment whatsoever because it will have no effect and can have no effect ultimately on the parole determination. The second portion of that, and I'm sorry, I said it a couple times but not very articulately, is the fact that because he will have a hearing, he has the opportunity at that time to make all these arguments. So the only consequence of an earlier hearing would be to ask for a different parole consideration at that time. There is, I would submit, absolutely no chance that at an earlier hearing would he gain a presumptive parole date that changes from 2042 to before 2020 at his next hearing. So gaining a procedural advantage in the Florida court is going to do absolutely nothing for Mr. Smith. Now I'd like to touch briefly again on the mootness issue that Your Honor brought up. Indeed, when looking at the NCIC-FCIC report, which is what the commission looks at, this conviction is no longer on the report. That means for purposes of the parole commission, for purposes of Florida's consideration for this man who is under a life sentence with a presumptive parole date of 2042, this conviction is gone. It is no longer going to affect him for consideration, whether at the 2020 hearing or any other hearing. So it's very interesting that he's asking this court to set aside finality in the federal court to eliminate this conviction when really the only consequence he has is no longer extant. It's gone for the purposes of the state. Now I don't think that's a mootness issue, Your Honor. I think it's still under the rubric of the quorum nobis parameter. It's very few that this court has set down, including a significant present continuing consequence. But if it's – so you're saying it's not moot in the sense that he still has real relief he's seeking and therefore it's not moot, but the factor that would give him that relief is no longer an extant factor. Correct, Your Honor. I think that is how it would be looked at, although I'm certainly not certain, and I had been musing on this myself for mootness. But if we're talking about Article III mootness, I don't think that we need to reach that. I understand. To return to my first point rather briefly, I had wanted to talk about mandate and about burden. The point being that regardless of what the factual finding is that we are determining, it has to be the defendant's burden to prove it. And so the question that we should be asking is what fact Mr. Smith proved that would create a significant continuing consequence and entitle him to proceed to the other prongs of quorum novus relief. I see that I only have a couple minutes left, but if Your Honors have any other questions, otherwise I'll conclude. Thank you very much. Thank you. Thank you. A clarification, Your Honor, with regard to the NCIC and FCIC report. At Document 28, Exhibit 14, that is the report that Ms. Tully brought to the evidentiary hearing. It is broken up into two sections. The first section is the FCIC. That's the Florida equivalent of the criminal history. All pages except for the last page document all state convictions or arrests in the state of Florida. The 704 conviction is on the very last page on the national CIC report. So it's still present on his criminal history. It is not moot. This conviction does not exist in that document. Additionally, with regard— Does it matter, though, if it's on the national registry as long as it's not on the Florida registry? No, Your Honor. The Parole Commission looks at his entire criminal history report, which is comprised of the FCIC report and the NCIC report. That conviction still exists, and it was counted by Ms. Tully at the evidentiary hearing. She documented it on the very last page, and it's notated. What was entered into the record was her hand notations on that document, on the report, on the very last page. The commission, when provided a vacatur in this case of the 704 conviction, as I noted before, will trigger their review of the entire file, and that's where the district court erred as determining the present harm related to Mr. Smith. And that present harm is how they weigh and calculate his entire PPRD. That's the presumptive parole release date. On Document 28, Exhibit 5, on page 2, there is a scale for the salient factor score. It's a range. In this case, as it stands now, Mr. Smith's salient factor score of 2 gives him a range of 180 to 240 months. The commission, based on his criminal history, weighs that and determines where within the range to apply the number of months to that factor. Providing and eliminating this conviction allows them to re-weigh the weight of his criminal history. Assuming all of that is true, is there any reasonable likelihood, based on the record we have in front of us and the finding by the district court of a fashion, that the result would be different? Yes, Your Honor, and that's our point. By having the commission re-review his file, they take an entire look at his parole file. Let's accept that they're going to take another look. Right. Is there any reasoned probability that after having taken such a look, they likely would have done something different? Yes, Your Honor, because there's one less conviction in the calculation for the weight they provide in the salient factor score. But you don't object to these other convictions? How many other convictions do you agree he has? I'm really interested in your answer to that because the record is kind of confusing to me. Your Honor, the historical record in Mr. Smith's case was the three. I'm not asking for the historical record. What does the evidence in this case reveal as to how many convictions he had? With regard to the record, it was four. No more than four? Yes, Your Honor. Including or excluding the stolen ballot? Including. Okay, so then three excluding. Correct, but there are two convictions, and I'll step back for a second. Ms. Tully identified five in the record. One was the very first one on page one and is identified as the conviction as number one. And, Your Honor, Judge Newsom, you pointed this out. It was a traffic violation when he was 17 years old and received probation. The Florida Administrative Code allows for those types of convictions to not be counted when it's considered a diversionary program. The same is applied with regard to the other conviction, Ms. Tully. Before you move on, though, you said the Florida Administrative Code allows them not to be counted when as part of a diversionary program. Does it allow this one to be counted, either pursuant to the rule that I cited or otherwise? No, Your Honor, and when it crossed the gamut of Ms. Tully, she could not say for certain that that one would not be exempted by the commission. She acknowledged that the commission had not counted it previously. However, she sat there and counted it in purpose of the evidence you're hearing. There was nothing previously relied on by the commission that that would count, and one can only Let me ask you this, though, because the rule that I, in addition to the rule that I read earlier, there is a Rule 23-21.007. Subsection B says that in scoring this item, don't count, dot, dot, dot, non-criminal traffic infractions as part of the prior criminal record. This is a misdemeanor, that's criminal, traffic infraction. So why, by inferential analysis, wouldn't we think that this one ought to be included, particularly in conjunction with the other provision that I cited that says the probationary. Your Honor, I would submit that the commission had the opportunity to use or identify that conviction as one that would be calculated in his in his salient factor score. And again, I understand Ms. Tully counted it. However, she would not be the one dealing with the conviction or the review period when Mr. Smith comes about in 2020 or prior to that, because she's currently a trainer. She testified that she's a trainer. She's not part of that process anymore. With regard to that conviction, there was nothing in the historical record. It's very important to know that the commission had previously never relied on conviction one. But I think you're, I mean, you're missing the thrust of Judge O'Dell's question, which is forget about what the commission did before. We understand it's not part of the historical record. But as matters stand right now, is this a valid, audible, for purposes of this, you can call it harmless error or whatever, for purposes of this analysis to figure out whether or not there is a continuing effect of this evidence? I'd argue that it wouldn't count, Your Honor. And that was our position at the evidentiary hearing and the briefing as well. With regard to Mr. — I see my time is up. May I briefly conclude? Bring it to a head if you could, please. Yes, Your Honor. The district court erred because there had to be a substantial change with regard to a conviction that Mr. Smith can bring forward with the commission to show that something had changed in his parole profile. By showing that the 704 conviction is vacated, that triggers the commission to conduct an overall review. And that's the harm that's more than incidental. That's the present harm here. This is the gateway. This is Mr. Smith's golden ticket to allow the commission to re-review his file. And basically by re-reviewing it, it leads to a potential of immediate release. You're saying that when he goes to the 2018 hearing, they are not going to give an overall review. They're only going to look at his prison conduct. Is that right? Correct, Your Honor. But don't they have the power? Is there anything that restricts their power to go back and re-examine the salient score in light of any argument he might make? I'll point to the record at 28-9 where the commission states that you've provided nothing to indicate that we should change our mind. So they disagreed factually with your position about whether this is a material statement. But I'm not asking about that. I'm asking on a regularly scheduled review like in 2020, doesn't the commission have the power, if they think it is useful, to go back and recalculate the salient score? They can, Your Honor. But if this conviction stands, the commission will continue to rely on it. But, of course, under our standards for review here, Encorum Novus, he's got to show a present substantial harm, not just a hypothetical. Your Honor, I would submit it's not a hypothetical because the commission can re-weigh everything in his file with regard to his eligibility. We're looking at a difference between immediate release and the opportunity to never have the opportunity to present anything that would trigger the commission's review. The commission will not sui sponte conduct an overall review unless something is presented to them to trigger them to do so. They've never done it in the past historically in his case. They've always relied on whatever Mr. Smith has presented. And he's at the end of the road here. The 704 conviction is his only opportunity to engage the commission to review his whole entire file. Why can't he make that same argument in 2020? Because without the vacatur of this conviction, there's no substantial change. That would trigger the commission to, the commission has to have a legal document, a court document that says this conviction no longer stands. Mr. Smith will not have that in 2020. When he comes to the commission, this 704 commission remains on his NCI report. And they will continue to kick the can down the road with regard to their analysis on his PPRD date.  Thank you, Your Honor.